IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM M. WATTS,

                Plaintiff,

  v.

J. SZETELA, R. GUPTA, C. RITTER,
MELISSA LAUFENBERG, LOUIS WILLIAMS II,
MARK KIDMAN, PAUL HARVEY, SARA REVELL,
IAN CONNORS, UNITED STATES OF AMERICA,
and BRAZOS URETHANE, INC.,

                Defendants.

OPINION and ORDER

18-cv-49-jdp

---

Pro se plaintiff William M. Watts alleges that he was injured after being sprayed in the face with a roof-sealing chemical used by a contractor at the Federal Correctional Institution in Oxford, Wisconsin, where Watts was incarcerated in 2015 and 2016. He is proceeding on claims against prison staff for failing to protect him from the accident and for failing to provide him with adequate medical care afterward. He is also proceeding on negligence claims against Brazos Urethane, Inc., the construction company that used the chemical sealant, and Mark Kidman, a privately employed optometrist who provided eye care to Watts.

Before the court is a motion to dismiss filed by the prison officials represented by the government.[1] Dkt. 36. They argue that (1) Watts failed to exhaust his administrative remedies for his Federal Tort Claims Act (FTCA) claims; (2) Watts's *Bivens* claims against defendants Ritter, Laufenberg, and Harvey are barred by absolute immunity; (3) the court lacks personal

---

[1] The government defendants are the United States, Szetela, Williams, Revell, Connors, Gupta, Ritter, Laufenberg, and Harvey. Defendants Kidman and Brazos Urethane, Inc. are represented by private counsel.

jurisdiction over defendant Connors; (4) the court should decline to imply a *Bivens* remedy against defendants Szetela, Williams, Revell, and Connors; (5) Watts's allegations do not state a claim against defendants Szetela, Gupta, Williams, Revell, and Connors; and (6) all of the prison official defendants are entitled to qualified immunity.

In a letter to the court, Watts concedes that he did not exhaust his FTCA claims and asks that those claims be withdrawn. Dkt. 35 at 2. And in opposing defendants' motion to dismiss, Watts again concedes that he did not exhaust his FTCA claims. Dkt. 42 at 3. Therefore, I will dismiss the FTCA claims. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 112 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").[2] Watts also agrees that his claims against defendants Revell and Connors should be dismissed. *Id.* at 5.[3] This leaves Watts's claims against defendants Szetela, Williams, Ritter, Laufenberg, Gupta, and Harvey to be addressed in this order.

I will dismiss Watts's claims against Laufenberg, Ritter, and Harvey because their position as officers of the United States Public Health Service immunizes them from Watts's

---

[2] Watts asks that he be able to revive his FTCA claims after he exhausts them, but this request is premature. If Watts completes the FTCA exhaustion requirements, he may file a request to amend his complaint to add FTCA claims. I would evaluate any such motion to amend under the standards set forth in Rule 15 of the Federal Rules of Civil Procedure. I would also likely consider whether the statute of limitations or any preclusionary principles bar the FTCA claims.

[3] After filing his opposition brief, Watts filed several motions for leave to file amended complaints. Dkts. 48, 51, 53, 54, 58, 59. His amended complaints omit Revell and Connors as defendants. I will grant the motions and will consider his proposed third amended complaint, Dkt. 59, as the operative pleading. His third amended complaint does not change his allegations relating to the remaining defendants in any significant way, so I will consider defendants' dismissal arguments as they apply to the third amended complaint. His third amended complaint replaces "John Doe Construction Co." with Brazos Urethane, Inc., so I have amended the caption accordingly.

*Bivens* claims. I will dismiss Watts's claims against Szetela, Williams, and Gupta because Watts's allegations are not sufficient to state constitutional claims against these defendants. The only remaining claims are Watts's claims against Dr. Kidman and Brazos Urethane, Inc.

ALLEGATIONS OF FACT

On September 14, 2015, while was Watts was outside the education building at FCI-Oxford, he was sprayed in the face with a chemical sealant being applied to a roof by workers for defendant Brazos Urethane, Inc. The next day, Watts was seen by defendant Dr. R. Gupta, who said that he did not see any surface burns or scarring on Watts's eyes. Gupta told Watts that the chemical he was sprayed with was "Green Block Prime 100," which Gupta believed was not hazardous.

On September 16, 2015, Watts sent a message to defendant J. Szetela, a "safety manager" at the prison. Szetela was responsible for making sure proper safety measures were taken for prison projects. Szetela did not immediately respond to Watts's request, but she later told Watts that the chemical was not hazardous and implied that Watts should not be concerned.

Watts started suffering from headaches and eye aches. Defendant Ritter, a physician's assistant, suggested he keep a "headache log." At one point, she thought that high blood pressure was causing the headaches, but she ruled that out after she recorded a high blood pressure reading while Watts did not have a headache.

On May 23, 2016, Watts met with defendant Mark Kidman, an optometrist who worked at the prison on a contract basis. Kidman said that Watts had enlarged optic nerves, which is a warning sign of early-onset glaucoma. Watts asked to meet with an outside eye

specialist, but Kidman did not refer him and instead put plaintiff down for a "call-back" for August 2016. Defendants Gupta and Ritter reviewed Kidman's notes and treatment decision.

On May 27, 2016, Watts told staff he had "ongoing discomfort" after being sprayed with the chemical. Defendant health administrator Melissa Laufenberg responded, but in her response she mentioned only chemicals used by the optometrist. (Laufenberg appears to have misunderstood Watts's complaint.)

In June 2016, Watts contacted health staff about obtaining tinted eyeglass lenses, because he was experiencing sensitivity to light. Laufenberg denied that request, saying that he needed to "have a diagnosis from an optometrist" to receive tinted lenses. Watts asked for an expedited appointment with an optometrist and then complained to Laufenberg about the delays in treatment.

On October 25, 2016, Watts spoke with a correctional officer who told him that OSHA had "shut down" Brazos Urethane a couple of times during the ongoing project, and that overspray had damaged employees' vehicles. Later, Watts saw a document showing that the company had not taken proper precautions to protect employees from the sealant being applied to the roof.

Watts saw an optometrist in October 2016. He was again diagnosed with having enlarged optic nerves. Watts asked Laufenberg if he could see an outside eye specialist. In November 2016, Laufenberg responded that Watts's concerns had been forwarded to the optometrist. But Watts did not receive an outside appointment. In March 2017, Laufenberg told Watts that he could get sunglasses from the commissary.

In May 2017, Watts met again with Kidman. Despite having his highest eye pressure yet, Kidman did not refer him to an outside specialist. Kidman instead set him for follow-up

4

in six months. Defendant Dr. Paul Harvey reviewed and approved Kidman's treatment decision.

Watts filed an inmate grievance, at which point he was given an appointment with defendant Robert King, a BOP doctor, who reconsidered the possibility that high blood pressure was causing the problem. Defendant Laufenberg denied Watts's grievance. Defendant Louis Williams II affirmed the denial.

On October 4, 2017, Watts met with Kidman, who noted that Watts was suffering vision loss. He recommended an outside consultation. An outside ophthalmologist diagnosed him with glaucoma and prescribed medication. Watts's eye pressure has improved since receiving outside treatment.

ANALYSIS

**A. Claims against defendants Ritter, Laufenberg, and Harvey**

Watts is proceeding on claims that defendants Ritter, Laufenberg, and Harvey violated his rights under the Eighth Amendment by failing to provide or ensure that he receive adequate medical care for his eye problems and headaches. Defendants argue that these claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Ritter, Laufenberg, and Harvey were acting within the scope of their duties as commissioned officers of the United States Public Health Service when they took the actions about which Watts complains, making them absolutely immune under 42 U.S.C. § 233(a), from actions under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

5

Defendants are correct. Under § 233(a), United States Public Health Service officers and employees acting within the scope of their employment "are not personally subject to *Bivens* actions for harms arising out of such conduct." *Hui v. Castaneda*, 559 U.S. 799, 802 (2010). The sole remedy for a plaintiff alleging harm by any such officer acting within the scope of his or her employment is a claim against the United States under the Federal Tort Claims Act. *Id.* In this instance, defendants have submitted evidence showing that Ritter, Laufenberg, and Harvey were commissioned officers who were employed by the Public Health Service to provide medical services to federal prisoners at FCI Oxford during the relevant time period, and that their actions relating to Watts were taken within the scope of their employment. Dkt. 38. *See also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (court may consider facts outside the pleadings in considering motion to dismiss on jurisdictional grounds). Watts has not challenged defendants' contentions that these defendants were officers of the Public Health Service and have absolute immunity under § 233(a). Therefore, I will grant defendants' motion to dismiss Watts's *Bivens* claims against Ritter, Laufenberg, and Harvey. *See Hui*, 559 U.S. at 802 (reversing denial of motion to dismiss *Bivens* claim against Public Health Service officers).

## B. Claim against defendant Szetela

Watts is proceeding on a claim that defendant Szetela, a safety manager at FCI Oxford, violated his Eighth Amendment rights by failing to protect him from the chemical spray used by Brazos Urethane. I stated in the screening order that Watts's allegations suggested that Szetela knew that the chemicals were harmful, but that he allowed prisoners to be exposed to the chemicals anyway. Defendants disagree with my reading of Watts's allegations, arguing that Watts alleges, at most, that Szetela should have known that the chemicals were hazardous,

that the roofers might act negligently, and that prisoners might be injured. Defendants argue that these allegations do not state a claim for deliberate indifference under the Eighth Amendment. Defendants also argue that Watts's claim against Szetela should be dismissed because Watts's claim presents a new *Bivens* context and that the court should not recognize a *Bivens* remedy under the circumstances.

"In *Bivens* the Supreme Court recognized an implied cause of action for damages against federal officers to redress a constitutional violation." *Engel v. Buchan*, 710 F.3d 698, 703 (7th Cir. 2013). But the Supreme Court has recognized an implied damages remedy under *Bivens* in only three cases: (1) a Fourth Amendment claim against FBI agents for handcuffing a man in his home without a warrant, *Bivens*, 403 U.S. 388; (2) a Fifth Amendment gender discrimination claim against a congressman for firing his female administrative assistant, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by a prisoner's estate against prison officials for failure to provide adequate medical care for his asthma, *Carlson v. Green*, 446 U.S. 14 (1980). And in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court expressed concern about further expansion of the implied rights created by *Bivens*, holding that federal courts should not expand *Bivens* actions to reach "new contexts" unless "special factors" counsel otherwise. *Id.* at 1859–60.

The government argues that Watts's claim against Szetela presents a new type of *Bivens* claim and that there are several special factors that weigh against recognizing a *Bivens* remedy under the circumstances here. But I need not resolve the *Bivens* question because I agree with defendants that Watts's allegations do not state a constitutional claim against Szetela.

Watts contends that Szetela, a safety officer, failed to protect him from Brazos Urethane's negligent actions. An official may be liable for failing to protect an inmate in

7

violation of the Eighth Amendment "if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). *See also Rice ex rel. Rice v. Corrections Medical Services*, 675 F.3d 650, 665 (7th Cir. 2012) ("An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it."). It is not enough to show that a prison official "should have known" about a substantial risk of serious harm. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). In the screening order, I stated that Watts's allegations suggested that Szetela failed to take reasonable steps to protect inmates from harm despite knowing that the roofing contractor would be using a hazardous chemical sealant and that the contractor had previously handled the chemical unsafely. Dkt. 13 at 5–6. But as the government points out, Watts does not allege that Szetela knew, prior to Watts's alleged injury, that the contractor would be using a dangerous chemical spray or that the contractor had used the chemical in an unsafe way.

Watts alleges that he contacted Szetela about the chemical spray the day after he was injured and that she responded by stating that the chemical was not hazardous to people. Dkt. 54 at ¶ 7. He also alleges that sometime after he reported his injuries, the contractor damaged some vehicles parked in the prison parking lot. *Id.* at ¶ 8. But these allegations do not suggest that Szetela knew, before Watts was injured, that the contractor would be using a chemical that posed an "excessive risk to inmate health or safety" or that there was a substantial risk that inmates would be exposed to the chemical. At most, Watts has alleged that Szetela acted negligently in failing to determine in advance whether the contractor's actions posed a risk of harm to the prisoners and in failing to minimize the risk. Because negligent actions do not violate the constitution, I will dismiss Watts's Eighth Amendment claim against Szetela.

8

**C. Claim against defendant Williams**

Watts is proceeding on an Eighth Amendment claim that Williams, the warden of FCI Oxford, failed to intervene to ensure that Watts received medical care after Williams reviewed Watts's administrative grievances. Defendants contend that Watts's claim against Williams should be dismissed for the same reasons as his claim against Szetela—because a *Bivens* remedy is inappropriate and because Watts's allegations are insufficient to state an Eighth Amendment claim against Watts.

Again, I need not resolve the question whether it is appropriate to recognize a *Bivens* remedy in this context, because I agree with defendants that Watts's allegations do not suggest that Williams acted with deliberate indifference to Watts's serious medical needs. In the screening order, I allowed Watts to proceed on the theory that Williams could have intervened when reviewing Watts's administrative grievance to ensure that Watts received better medical care. Dkt. 13 at 7. As the government points out, Watts's allegations include no details about what Williams knew regarding Watts's medical condition or the treatment Watts had received beyond what Watts put in his administrative grievance. Watts also includes no allegations suggesting that Williams had any reason, besides Watts's own opinion, to think that the prison health staff was disregarding Watts's medical needs. This matters, because "[p]rison officials are entitled to delegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). And nonmedical prison staff are entitled to defer to the judgment of health professionals so long as they do not ignore prisoner complaints. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Watts's own submissions confirm that Williams did not ignore Watts's complaints. In considering a motion to dismiss for failure to state a claim, a district court may consider any

9

facts set forth in the complaint, including exhibits attached to the complaint. Fed. R. Civ. P. 10(c); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). When he filed his third amended complaint, Watts filed Williams's response to his grievance as an attachment. Dkt. 59-2 at 13. In responding to Watts's complaint, Williams summarized the numerous medical appointments that Watts had received, both with prison health staff and the optometrist, and concluded that Watts's condition was being monitored by medical professionals. *Id.* Although Watts thinks that Williams should have done more, his allegations and grievance materials do not support a claim that Williams was deliberately indifferent to Watts's medical needs. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (non-medical prison officials are not deliberately indifferent under the Eighth Amendment if they investigate inmate complaints and find that medical staff is monitoring inmate's condition). Therefore, I will dismiss Watts's Eighth Amendment claim against Williams.

**D. Claim against defendant Gupta**

I turn now to Watts's Eighth Amendment claim against defendant Gupta, a doctor at FCI Oxford. I granted Watts leave to proceed on a claim that Gupta acted with deliberate indifference when he "approved" Dr. Kidman's decision not to refer Watts to an outside specialist despite his suffering symptoms of early-onset glaucoma.[4] Dkt. 13 at 7. The government argues that I should reconsider this conclusion because Watts's allegations do not actually suggest that Gupta was deliberately indifferent to Watts's serious medical needs.

I agree with the government. Prison officials are liable under the Eighth Amendment for cruel and unusual punishment if they are deliberately indifferent to a prisoner's serious

---

[4] I did not grant Watts leave to proceed on an Eighth Amendment claim arising from defendant Gupta's alleged misdiagnoses of Watts's condition in September 2015. Dkt. 13 at 7.

medical needs. *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but disregarded the risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Watts alleges that Kidman, an optometrist, examined him, noted that his enlarged optic nerves could be a warning sign of early-onset glaucoma, and scheduled him for a follow-up appointment in three months. Dkt. 54 at ¶ 9. Watts alleges that Gupta reviewed Kidman's notes of the encounter and did not intervene or recommend that Watts be seen by an outside specialist. *Id.* But these allegations do not suggest that Gupta was deliberately indifferent to Watts's serious medical needs. Instead, Watts's allegations suggest only that Gupta knew that Watts had complained of eye problems, that Watts had been seen by an eye specialist, and that the specialist thought the most appropriate plan of treatment was to monitor the progress of Watts's condition at a follow-up appointment. Watts has not alleged, for example, that Gupta had any specialized knowledge or other basis for questioning Kidman's treatment decision, or even that Gupta had authority to overrule Kidman's recommendations. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014) (holding that prison doctors who approved a recommendation for physical therapy from a specialist were not deliberately indifferent, even though the recommendation ultimately was deemed to be inappropriate). Therefore, I will dismiss Watts's Eighth Amendment claim against Gupta.

E. **Remaining claims**

For the reasons above, I am dismissing Watts's claims against all of the government defendants: United States; J. Szetela, Louis Williams II, Sara Revell, Ian Connors, R. Gupta, C. Ritter, Melissa Laufenberg, and Paul Harvey. The only claims remaining in the case are

Watts's Eighth Amendment and negligence claims against Dr. Mark Kidman and his negligence claim against Brazos Urethane, Inc.

ORDER

IT IS ORDERED that:

1. Plaintiff William M. Watts's motions for leave to amend his complaint, Dkts. 48, 51, 53, and 54, 58 and 59 are GRANTED.

2. The motion to dismiss, Dkt. 36, filed by defendants Ian Connors, R. Gupta, Paul Harvey, Melissa Laufenberg, Sara Revell, C. Ritter, J. Szetela, Louis Williams II, and United States of America is GRANTED:

   a. Plaintiff's claims against the United States of America under the Federal Tort Claims Act are DISMISSED without prejudice for plaintiff's failure to exhaust his administrative remedies;

   b. Plaintiff's claims against defendants Ritter, Laufenberg, and Harvey are DISMISSED under 42 U.S.C. § 233(a); and

   c. Plaintiff's claims against defendants Connors, Revell, Szetela, Williams, and Gupta are DISMISSED for failure to state a claim upon which relief may be granted.

3. Defendants Ian Connors, R. Gupta, Paul Harvey, Melissa Laufenberg, Sara Revell, C. Ritter, J. Szetela, Louis Williams II, and United States of America are DISMISSED as defendants from this case.

Entered June 25, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge